# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3730 |
| | § | |
| ARTHUR R. McFERRIN and | § | |
| DOROTHY McFERRIN, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This tax refund case is before the Court on the United States of America's (the "IRS's") claim for the recovery of a refund erroneously paid to defendants Arthur and Dorothy McFerrin.  Pending before the Court are the IRS's Motion for Summary Judgment (the "Motion") [Doc. # 14][1] and Defendants Arthur and Dorothy McFerrins' Cross-Motion for Summary Judgment (the "Cross-Motion") [Doc. # 26].[2]  Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that both motions should be **granted** in part and **denied** in part.

## I.     FACTUAL AND LEGAL BACKGROUND

This case involves the tax treatment of credits claimed by a partnership and its partners, and the limitations periods applicable to a partnership and its partners' tax returns

---

[1]     The McFerrins responded to the Motion [Doc. # 20] ("McFerrins' Response"), and the IRS replied [Doc. # 23].

[2]     Briefing on the Cross-Motion includes the IRS's response [Doc. # 29] ("IRS's Response") and the McFerrins' reply [Doc. # 30].

and amendments thereto.  The case is governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA").  *See* TEFRA, Pub.L. 97-248, § 402(a), 96 Stat. 648 (TEFRA partnership provisions).  "Under [TEFRA], partnerships are required to file informational returns reflecting the distributive shares of income, gains, deductions, and credits attributable to their partners, while individual partners are responsible for reporting their *pro rata* share of tax on their income tax returns."  *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324, 327 (2006).  TEFRA sets out the relevant procedures for the IRS's tax assessments regarding aspects of partnership returns as well as individual partners' claims as to partnership items.[3]  A "partnership item" is "any item required to be taken into account for the partnership's taxable year . . . to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level."  26 U.S.C. § 6231(a)(3).

The following facts are uncontested, and are drawn from the Complaint and Answer. Arthur McFerrin was, at all relevant times, the sole shareholder of four corporations:  South Coast Acquisition, Inc. ("SC Acquisition"), South Coast Deleware, Inc. ("SC Deleware"[4]), KMCO, Inc. ("KMCO"), and KMCO Port Arthur, Inc., doing business as KMTEX

---

[3]  "Under TEFRA, the threshold determination whether an item is a 'partnership item' or a 'nonpartnership item' governs the application of the TEFRA procedures.  The treatment of all partnership items are determined at the partnership level."  *Grapevine Imports*, 71 Fed. Cl. at 327 (citing 26 U.S.C. §§ 6211(c), 6221, 6230(a)(1)).  The definition of "partnership items" is not involved in the parties' disputes presented in this case.

[4]  The IRS notes that the corporation's tax return spells its name "Deleware."  Motion, at 2. The McFerrins consistently use this spelling in their pleadings.  *See, e.g.,* Cross-Motion at 2 and *passim*.  The Court therefore adopts the McFerrins' unconventional spelling.

("KMTEX") (collectively, the "S Corporations").  SC Acquisition and SC Deleware were the sole two partners in South Coast Terminals ("SC Terminals").  SC Acquisition owned 1% of SC Terminals as a general partner, while SC Deleware owned the remaining 99% as a limited partner.

In July 2000, SC Terminals filed a timely Form 1065, a partnership income return, for the year 1999.  That return did not claim any credit for "increasing research activities." The four S Corporations also timely filed their 1999 taxes in March and May of 2000.  None reported any credit for increasing research activities.  On October 13, 2000, the McFerrins filed their joint personal income tax return, Form 1040, for 1999.  They also did not claim a credit for increasing research activities.

"Increasing research activities" is a source of tax credits and deductions available to taxpayers pursuant to Sections 41 and 280C of the Internal Revenue Code, 26 U.S.C. §§ 41, 280C.  These provisions allow taxpayers to claim a credit for "qualifying" or "basic" research expenses, *see* 26 U.S.C. § 41(b) and (e)(2), respectively, "undertaken for the purpose of discovering information which is technological in nature" and "intended to be useful in the development of a new or improved business component of the taxpayer."  *Id*., § 41(d)(1)(B).  Sections 41 and 280C of the I.R.C. provide for different calculations of research credits.  Section 41 controls the general treatment of such tax credits, and provides for a credit of 20% of the applicable sum spent on research.  Section 280C(c)(3) allows taxpayers to claim a reduced credit of 13% of the expenditures.  Because the allowable deduction for research activities is offset by the amount of the credit claimed, the

§ 280C(c)(3) reduced credit may result in advantageous tax consequences for some taxpayers. *See id.*, § 280C(c)(1), (3).[5]   Of particular relevance to this case is § 280C(c)(3)(C), which prohibits retroactive election of a reduced credit.

On September 22, 2003, more than three years after its original 1999 return, SC Terminals filed an amended partnership income return for 1999.[6]   The amendment included a supplementary page explaining that "[t]he taxpayer is amending their return to additionally include Form 6765, Credit for Increasing Research Activities."[7]   The amended Form 6765 reported qualifying research expenditures of $1,023,785.[8]   One-half of this amount, or $511,892.50, was the basis for SC Terminals' research credit.   The return claimed $66,546 as the actual credit for 1999.[9]   This amount is 13% of the base.[10]   This amount is consistent with the increasing research activities credit instructions at line 16 on the face of the form. Those instructions provide:   "If you are not electing the reduced credit under section

---

[5]   A taxpayer may therefore choose, subject to certain limitations, to take a reduced tax credit pursuant to § 280C, rather than the standard § 41 credit, in order to take a larger tax deduction.

[6]   SC Terminals' Amended Return for 1999 ("SC Terminals' Amended 1999 Return"), Complaint, Exhibit 12.

[7]   *Id.*

[8]   *Id.* at 9, line 15.

[9]   *Id.* at 9, line 16.

[10]   The SC Terminals 1999 filing bears a handwritten notation explaining that the credit amount is 13% of the base amount.   It is not clear, however, whether this notation was written by the preparer of the original return or was added later to clarify the relationship between the figures in lines 15 and 16 of the Form 6765.   *Id.*

280C(c), multiply line 15 [the base amount] by 20% (.20). . . .  If you are electing the reduced credit, multiply line 15 by 13% (.13) and enter the result.  Also, write 'Sec. 280C' on the dotted line to the left of the entry space."[11]  Although the claimed credit is 13% of the base amount, there is no "Sec. 280C" notation on the return.[12]

The $66,546 research credit was passed along to SC Acquisition and SC Deleware, the two partners in SC Terminals.  Those entities also filed amended 1999 returns in September 2003.  The research credit was applied to the partners' amended 1999 returns in amounts proportional to their interest in SC Terminals—SC Acquisition claimed $665 (one percent of the total credit)[13] and SC Deleware claimed $65,881 (the remainder of the credit).[14]  The amended returns for these S Corporations contained no other changes from the original returns.  Their amended returns explain that the corporations were "amending their return[s] because they received an amended K-1 from South Coast Terminals, L.P."[15]

KMTEX and KMCO also filed amendments to their 1999 tax returns in September 2003.  These S Corporations followed the same procedure as SC Terminals, claiming 13%

_____

[11]     *Id.*

[12]     *Id.*

[13]     *See* SC Terminals' Amended 1999 Return, at 10, line 13.

[14]     *See id.* at 12, line 13.

[15]     SC Acquisitions' Amended Return for 1999 ("SC Acquisitions' Amended 1999 Return"), Complaint, Exhibit 10, at 2; SC Deleware's Amended Return for 1999, Complaint, Exhibit 11, at 2.

of the base amounts subject to research credits. KMTEX claimed a credit of $14,900,[16] and KMCO claimed $390,646.[17] Both corporations explained that they were "amending their return to additionally include Form 6765, Credit for Increasing Research Activities."[18] Neither return cited a specific provision of any statute or regulation authorizing the claimed credits.

Also in September 2003, Arthur and Dorothy McFerrin filed an amended 1999 tax return. Their amendment claimed a $472,092 credit,[19] which was explained by the notation, "TAXPAYER RECEIVED AMENDED K-1S FROM SOUTH COAST ACQUISITION, INC., SOUTH COAST DELEWARE, INC., KMCO PORT ARTHUR, INC. d/b/a KMTEX, AND KMCO, INC."[20] This change resulted in a $472,092 refund to the McFerrins, which the Internal Revenue Service paid on November 7, 2003. The IRS now files suit for recovery of that refund, arguing that it was improper and issued in error. *See* 26 U.S.C. § 7405 (credits and refunds awarded after the limitations period has expired or which are otherwise erroneous "may be recovered by civil action brought in the name of the United States.").

---

[16]   KMTEX's Amended Return for 1999 ("KMTEX's Amended 1999 Return"), Complaint, Exhibit 9, at 10, line 16.

[17]   KMCO's Amended Return for 1999 ("KMCO's Amended 1999 Return"), Complaint, Exhibit 8, at 11, line 16.

[18]   KMTEX's Amended 1999 Return, at 2; KMCO's Amended 1999 Return, at 2.

[19]   McFerrin Amended Return for 1999 ("McFerrins' Amended 1999 Return"), Motion, Appendix A, at 21.

[20]   *Id.* at 22.

On September 18, 2006, nearly a year after the IRS commenced this federal court suit and just before the Motion was filed, SC Terminals, the S Corporations, and the McFerrins each filed a second amended Form 1065 for the year 1999.[21]  The IRS asserts that these returns "request a refund calculated in accordance with sections 41(a), 280C(c)(1), and 280C(c)(2) of the Internal Revenue Code of 1986 . . . , rather than in accordance with section 280C(c)(3) of the Code."  There is no indication in the record that these second amended returns have been processed by the IRS, which contends that they are untimely.

## II.   DISCUSSION

### A.   Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party

---

[21]    *See* Unlabeled Attachments to Objections to Motion ("Second Amended 1999 Returns"); Sealed Exhibits to Cross-Motion.

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

### B.  <u>Federal Tax Refunds</u>

"In an action to recover an erroneous refund brought pursuant to 26 U.S.C. § 7405, the government bears the burden of proof." *United States v. Commercial Nat'l Bank of Peoria*, 874 F.2d 1165, 1169 (7th Cir. 1989) (citing *Soltermann v. United States*, 272 F.2d

387 (9th Cir. 1959); *United States v. Wood*, 79 F.2d 286 (3d Cir. 1935)).  The IRS is required to prove either that the McFerrins were not entitled to *any* refund under IRC § 41 (or § 280C) or prove how much of the refund was paid in error.  *See Commercial Nat'l Bank of Peoria*, 874 F.2d at 1169 (government must prove that a refund was paid, the amount of the refund, that its suit is timely, and that the claim for the refund was untimely); *Soltermann*, 272 F.2d at 387 (rejecting argument that the government need only make a *prima facie* showing that the refund was improper to shift burden to defendant of proving what portion of refund should be repaid).

There is a general three-year statute of limitations on taxpayers' claims for credits and refunds.  Such a claim "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . ."  26 U.S.C. § 6511(a).  "No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period."  26 U.S.C. § 6511(b)(1).[22]  *See* 26 C.F.R. § 301.6402-2(a)(1) ("Credits or refunds of overpayments may not be allowed or made after the expiration of the statutory period of limitation properly applicable unless, before the expiration of such period, a claim therefor has been filed by the taxpayer.")

---

[22]     However, pursuant to 26 U.S.C. § 6511(b)(2)(B), a taxpayer may file a claim for a credit or refund after the limitations period, although the taxpayer may only recover a credit or refund for the two years immediately preceding the filing of such untimely claim.

Section 6511, by its own terms, does not apply to partnership items.[23]  *See* 26 U.S.C. § 6511(g).  Partnership items are subject to a separate limitations period, 26 U.S.C. §§ 6227 and 6230(c), (d).  Pursuant to 26 U.S.C. § 6227(a)(1), a partner may file for an administrative adjustment of a tax assessment for any year that is "within 3 years after the later of (A) the date on which the partnership return for such year is filed, or (B) the last day for filing the partnership return for such year (determined without regard to extensions)."  Here, because Arthur McFerrin as the sole shareholder of the S Corporations received an extension and timely filed after the last day for filing the partnership return, the relevant provision is subsection (A).  Section 6230(d)(1) forbids granting a credit or refund on a partnership item to a partner "after the expiration of the period of limitation prescribed in section 6229 with respect to such partner for assessment of any tax attributable to such item."

Finally, as relevant to this dispute, a claim for a refund or credit  "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof," and that statement must "be verified by a written declaration that it is made under the penalties of perjury."  26 C.F.R. § 301.6402-2(b)(1).  "A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."  *Id*.

---

[23]    The parties do not dispute the treatment of SC Terminals' claim for research credits as a partnership item.

C.    **Taxpayers' 2003 Amendments**

1.    **SC Terminals**

The parties agree that the McFerrins' and S Corporations' initial amended returns filed in September 2003 were timely.  Defendants Arthur and Dorothy McFerrin timely filed their 1999 tax return in October 2000.  This filing triggered the three-year period in which taxpayers may amend their returns to claim additional credits or refunds.  *See* 26 U.S.C. § 6511(a).  Because a shareholder's filing commences the limitations period on non-filing corporation, *see Bufferd v. Comm'r of Internal Revenue,* 506 U.S. 523, 527 (1993) (referring to limitations period on assessments, which is analogous to the period here), this was also the effective filing date for each of the S Corporations.  The three-year period in which to file amended returns under § 6511 ended for the McFerrins and the S Corporations in October 2003, making their 2003 amendments timely.

The IRS contends that SC Terminals' amended 1999 partnership return, however, was untimely, and that whatever portion of the McFerrins' refund is allocable to that time-barred return was therefore  improperly granted.  SC Terminals filed its original 1999 return in July 2000, and its amended return in October 2003.  Under 26 U.S.C. § 6227(a)(1)(A), the IRS argues, the SC Terminals amended return was therefore untimely.  SC Acquisitions and SC Deleware claimed their credits for 1999 based on SC Terminals' amended return, and the McFerrins claimed a portion of that amount as part of their claim for credits.  According to

the IRS, whatever part of the McFerrins' refund that is attributable to SC Terminals' credit must be repaid.[24]

The McFerrins agree that the three-year statute of limitations set out in § 6227(a)(1)(A) is generally applicable.[25]  They argue, though, that § 6230(d) "serves to, in certain cases, extend the general three [year] period stated in IRC § 6227(a)."[26]  They cite § 6230(d)(1):

> Except as otherwise provided in this subsection, no credit or refund of an overpayment attributable to a partnership item (or an affected item) for a partnership taxable year shall be allowed or made to any partner after the expiration of *the period of limitation prescribed in section 6229 with respect to such partner for assessment of any tax attributable to such item.*  (Emphasis added.)

Section 6229 sets out the limitations period for the IRS to assess taxes on partnership items. Under § 6229(a)(1), that period "shall not expire before the date which is 3 years after . . . the date on which the partnership return for such taxable year was filed."[27]  The remainder of the section provides a variety of circumstances in which that limitations period is extended or waived.[28]  None of those extensions or waivers apply in this case.  The

---

[24]    *See* Motion, at 14-15.

[25]    *See* McFerrins' Response, at 8.  "A partner may file a request for an administrative adjustment of partnership items for any partnership taxable year at any time which is within 3 years after . . . the date on which the partnership return for such year is filed."  26 U.S.C. § 6227(a)(1)(A).

[26]    *Id*.

[27]    The alternative provision, § 6229(a)(2), is not applicable to this case.

[28]    *See, e.g.,* 26 U.S.C. § 6229(c)(3) (where a partnership fails to file a return for a tax year, the
                                                                                           (continued...)

limitations period of § 6229, like that in § 6227(a)(1)(A), is therefore three years from the date the original return was filed. *See* 26 U.S.C. § 6229(a)(1).  Nothing in the express language § 6230(d)(1) or § 6229(a)(1) as applied to this case operates to make timely SC Terminals' amended 1999 return.

The McFerrins argue nevertheless that § 6229 "operates in conjunction with IRC § 6501."[29]  While the IRS does not contest this point at the most general level, and the Court adopts this principle, the result advanced by the McFerrins is not supported by the law. Section 6229 sets out a minimum period—three years—during which the IRS may make tax assessments on partnership items, while § 6501(a) prescribes a three year period as the maximum period for the IRS's assessments.[30]  Nothing on the face of these statutes makes SC Terminals' amended 1999 return timely.

The McFerrins continue their analysis, however, by pointing to cases in which courts have extended the § 6501 limitations period.  Citing *Rhone-Poulenc Surfactants and Specialties, L.P. v. Comm'r of Internal Revenue*, 114 T.C. 533, 551 (2000),[31] the McFerrins

---

[28]     (...continued)
         IRS may at any time assess any tax for that year, without regard to the limitations period).

[29]     *Id.* at 9.  *See* 26 U.S.C. § 6501(a) ("Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed. . . .")

[30]     There are specific provisions in § 6501 for extending the three-year limitations period, *see* 26 U.S.C. § 6501(c), (e), but the McFerrins do not argue that any of these provisions apply.

[31]     McFerrins' Response, at 9-10.  The McFerrins also rely on *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324, 2006-1 U.S. Tax Cas. (CCH) ¶ 50,352 (Fed. Cl. 2006); *Andantech L.L.C. v. Commissioner*, 356 U.S. App. D.C. 387, 331 F.3d 972 (D.C. Cir. 2003).  Neither of these cases discuss the issue of the time limits for a taxpayer to file an amended return seeking a refund or credit.

argue that the IRS may make administrative adjustments to a partnership's return "more than three years after the filing of that partnership return if the statute of limitations pursuant [to] IRC § 6501 remained open for the individual return of an affected partner."[32]  The McFerrins deduce that a taxpayer's time to amend a partnership return is comparably extended[33] because any extensions of the § 6501 limitations period for the IRS to make assessments is incorporated into § 6229, and thus into § 6230(d) by implication.  Thus, allegedly the SC Terminals' amended return is timely.[34]  The Court is unpersuaded that § 6501 determines the appropriate limitations period for a taxpayer's amendment to its return seeking a credit or refund.

While the McFerrins generally state correctly the holding of *Rhone-Poulenc*, the Court concludes that their application of that ruling to this case lacks legal support.  *Rhone-Poulenc* dealt solely with the period in which the IRS may make assessments in the partnership context.  Nothing in the ruling suggests that an extension of the § 6501 limitations period on assessments should be imputed to § 6229 for purposes of the mandate of § 6230(d).  The Tax Court held that "[s]ection 6229 provides a *minimum* period of time for the assessment of any tax attributable to partnership items (or affected items)

---

[32]    McFerrins' Response, at 9.

[33]    *See id.* at 9-10 ("Clearly, Congress intended for the period of limitations within which the IRS may assess additional tax against an individual partner for a partnership item to be identical to the period of limitations within which that partner may apply for a refund.  IRC §§ 6511(g), 6227(a), and 6230(d).").

[34]    More specifically, the McFerrins contend that SC Terminals' original filing date should be deemed to be the date its partners' returns were filed and, because its partners are S Corporations, those filing dates are deemed to be the date their shareholder, Arthur McFerrin, filed his return, *i.e.*, October 2000.

notwithstanding the period provided for in section 6501, which is ordinarily the *maximum* period for the assessment of any tax." *Rhone-Poulenc*, 114 T.C. at 542 (emphasis original). Nothing in § 6501, according to the Tax Court, alters the specific period set out in § 6229 for partnership items.  The Tax Court endorsed the argument that "sections 6229 and 6501 contain alternative periods within which to assess tax with respect to partnership items, with the later-expiring-period governing in a particular case." *See Rhone-Poulenc*, 114 T.C. at 540-41; *see also id.*, at 542, 550-51.  Section  6229, however, does not reference § 6501 in any way.  Because § 6501 sets out separate limitations periods from those in § 6229, an extension of a limitations period under § 6501 does not alter the period prescribed by § 6229 and incorporated by § 6230(d)(1).  Section 6230(d)'s limitations period, including the reference to § 6229, must be determined on its own terms and, as relevant to the facts in this case, that period is three years.

        This interpretation of § 6230(d)(1) is consistent with the language of the statute. Congress stated that "no credit or refund of an overpayment attributable to a partnership item (or affected item) for a partnership taxable year shall be allowed . . . after the expiration of the period of limitation prescribed in section 6229 with respect to such partner for assessment of any tax attributable to such item."  This language is quite clear.  The reference in § 6230(d) to "the period of limitation prescribed in section 6229" refers to the period of time in which  IRS may assess taxes under that section only; nothing in the statute's wording expressly or impliedly incorporates any other statutory provision to extend the time for

taxpayers to seek a refund or credit by amendment to the tax return.[35]  *See Grapevine Imports*, 71 Fed. Cl. at 327 ("[S]ince the statutory language appears clear . . . , it is far from apparent that this court could depart from the language that Congress actually enacted even if it created disfunctionality.")  The McFerrins' cited authorities do not support their contention to the contrary because their cases do not address § 6230(d) or partnerships' applications for refunds or credits.

The Court therefore holds that extensions of the § 6501 limitations period applicable to IRS assessments based on the time that partners' returns were filed does not determine the limitations period in this case for taxpayers' amendments of returns seeking credits or refunds.  Thus, any applicable extensions of the § 6501 limitations period for the IRS to make assessments does not make SC Terminals' amended filing timely.  Pursuant to §§ 6227(a)(1), 6229(a), and 6230(d)(1), the time to file an amendment expired in July 2003. SC Terminals' 1999 amended return filed in October 2003 was several months late and SC Terminals was not entitled to the credit it belatedly claimed.  The credit received was improperly passed on to its S Corporation partners, and eventually to the McFerrins.  The IRS is therefore entitled to repayment of the portion of the McFerrins' refund that arose from SC Terminals' first amended 1999 filing.

---

[35]     The McFerrins suggest that if the limitations period for the IRS and for taxpayers are not equivalents, as they propose, then the result would be untenable as the IRS would be able to make new assessments beyond the period in which the taxpayer could amend the return.  *See* McFerrins' Response, at 11.  This argument is belied by the statutes.  The taxpayer's time to amend a return is extended under these circumstances.  Under § 6229(d), the minimum period for assessments is tolled for a minimum of one year after the IRS makes a new assessment on a partnership.  As an extension of the § 6229 period, this new limitations period would be read into § 6230(d).

The IRS has not, however, attempted to prove what portion of the McFerrins' credit is allocable to SC Terminals' untimely amendment.  The extent to which SC Terminals' untimely amendment makes the McFerrins' refund improper is a factual question on the present record, and must be addressed at a later stage of the proceedings.

### 2.    The McFerrins and S Corporations

The IRS also contends that the remainder of the credits were improperly granted. Because the McFerrins, S Corporations, and SC Terminals did not provide a particularized explanation for their amended 1999 returns,[36] the IRS argues that they failed to comply with Treasury Regulation ("Reg.") § 301.6402-2(b)(1), requiring that any such claim "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof."  That regulation "distinguishes between the ground for the claim—that is, the legal theory upon which the refund is claimed—and facts sufficient to apprise the Commissioner of the exact basis thereof."  *Lockheed Martin v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (citation omitted).  The specificity requirement is met "if the basic issue is evident from the record, and the IRS is aware of the nature of the claim."  *IA 80 Group, Inc. and Subsidiaries v. United States*, 347 F.3d 1067, 1074 (8th Cir. 2003).

The IRS here argues that SC Terminals' and the S Corporations' putative basis for claiming the research credits is impermissibly vague.  The Court is unpersuaded.  Although

---

[36]    *See* McFerrins Amended 1999 Return, at 22 ("TAXPAYER RECEIVED AMENDED K-1S FROM SOUTH COAST ACQUISITION, INC., SOUTH COAST DELEWARE, INC., KMCO PORT ARTHUR, INC. d/b/a KMTEX, AND KMCO, INC.")

brief, the McFerrins' amended return, which underlay the corporations' and partnership's returns, explained the reason for their amendment, and included a Form 6765 in which they reported $472,092 "[f]low-through research credit(s) from a partnership, S corporation, estate, or trust."[37]  The amended filings also included Schedule K-1s for each of the S Corporations, stating that the credits (as passed through to the McFerrins) were "Credit for Increasing Research Activities."[38]  The amendment makes it plain that the basis for the credit is increasing research activities and calculates a specific amount.[39]  The IRS was on notice of the "nature of the claim," *IA 80 Group*, 347 F.3d at 1074, the entities claiming the credit, and the legal theory upon which the claim was founded.[40]  The IRS, on the other hand, provides no indication of what additional information it needs to satisfy the requirements of Reg. § 301.6402-2(b)(1).  The IRS has therefore not met its summary judgment burdens on its Motion or the McFerrins' Cross-Motion.  There is no question of material fact that the McFerrins supported their claim with sufficient detail under Reg. § 301.6402-2(b)(1).  The IRS accordingly is not entitled to summary judgment on its claim that the McFerrins failed to set out the grounds for their amended filing.  On the other hand, the McFerrins have

---

[37]     McFerrins' Amended 1999 Return, at 27.

[38]     *Id.* at 30, 32, 34, 36.

[39]     The McFerrins improperly sought a 13% credit under § 280C(c)(3), rather than a 20% credit under § 41, as discussed below.  The IRS does not explain how that error made it unable to determine the ultimate basis for the McFerrins' claim, as § 280C(c)(3) refers to § 41 as the basis for the credit.

[40]     As discussed *infra*, § 280C(c)(3) merely provides an alternate method of calculating the credit authorized by § 41.  Even though the McFerrins' attempted to utilize § 280C(c)(3), the legal basis for their claim was clearly § 41.

shown they have met the regulation's requirements and *are* entitled to summary judgment in their favor on this issue.

The IRS next argues that, because the McFerrins calculated a 13% credit, instead of the standard 20%, "the only conclusion one can draw is that the reported research credit is based upon the reduced credit provided for by section 280C(c)(3)(A) of the Code, *rather than* the credit provided in section 41(a) of the Code."[41]  It is clear that § 280C(c)(3)(A) is not available to an amending filer:  "An election under this paragraph [§ 280C(c)(3)(A)]for any taxable year shall be made not later than the time for filing the return of tax for such year (including extensions), shall be made on such return, and shall be made in such manner as the Secretary may prescribe."  The IRS therefore argues that the McFerrins' amendment is an attempt to claim credits under a provision that was barred to them.  Section 280C(c) is not, however, an independent basis for claiming a refund or credit even when asserted in a timely original return.  It merely describes an alternative method of calculating a refund  or credit authorized by § 41(a).  *See* 26 U.S.C. § 280C(c)(3)(A)(ii) ("the amount of the credit under section 41(a) shall be the amount determined under subparagraph (B)").  It is clear that the McFerrins sought to claim research credits under § 41 as augmented by § 280C(c).  Line 16 of Form 6765 does not set out an independent basis for research credits; it allows filers to choose between two methods of calculating the credit fundamentally authorized by § 41.  The McFerrins are not entitled to the calculation that they chose under § 280C, but the bar

---

[41]     Motion, at 16 (emphasis added).

in § 280C(c) does not preclude the McFerrins' reliance on § 41.  The IRS's argument is rejected.

The IRS has failed to raise a material question of fact that the McFerrins are not entitled to the § 41 research credits in returns that they timely filed.  Thus, summary judgment in the McFerrins' favor is warranted on that specific issue.  Had Congress wanted to preclude retroactive refund claims under § 41, it could have done so.  It did not.  The McFerrins' improper calculation of that credit (13%, rather than 20%, of the expenses) creates a material fact issue, however, as to the proper amount of their passed-through credit.[42]  The correct calculation of the McFerrins' credits, and of what portion of those credits must be returned to the IRS, remains at issue in this case.

**B.    Taxpayers' 2006 Amendments**

In an attempt to cure any defect in the amended 1999 returns (filed in 2003) the McFerrins, the S Corporations, and SC Terminals filed further amended 1999 returns (the "second amended returns") in September 2006.  According to the McFerrins, the IRS "has not processed" those returns.[43]  The IRS does not contest this assertion, and argues that the second amended returns are untimely under 26 U.S.C. § 6511(a) and (g).

The McFerrins contend that, because the second amendments are based "on the same facts stated in the original claim[s]," and because their amended claim filed in 2003 was

---

[42]     The McFerrins' second amended returns, filed in 2006, reflect that the McFerrins received a larger refund than warranted and owe an additional $85,188 in 1999 taxes.  The IRS has not confirmed its agreement with this figure and the Court takes no position at this time on whether these second amended returns' calculations are accurate.

[43]     Cross-Motion, at 5.

timely, they may amend the returns a second time in 2006 even though the limitations period had expired by that time.[44]  *See Parker Hannifin Corp. v. United States*, 71 Fed. Cl. 231, 234 (2006) ("Amendments to a properly filed refund claim are permitted after the statute of limitations for filing refund claims has expired if the amendment is "germane" to the original claim and was presented before the original claim is resolved." (citing *United States v. Andrews*, 302 U.S. 517, 524 (1938))).  Such an amendment is limited by the scope of the original claim:

> [A] *timely filed* refund claim which sets forth a specific claim for a refund may also be amended prior to final action on the original claim and after the running of the period for filing a refund claim where the amendment seeks a different method of computing a tax or a different form of relief on the basis of the same facts as were relied upon in the original claim, and where the amendment does not require a new investigation outside of that involved with the original claim.

35 AM. JUR. 2d *Federal Tax Enforcement* § 505 (2007) (emphasis added).  A threshold requirement for a refund claim is therefore that the claim amendment be made upon a timely original claim, which here requires that the amended 1999 return, filed in 2003, was timely. Because, as held above, SC Terminals' first amended 1999 partnership return (filed in 2003) was untimely, SC Terminals' 1999 return may not be amended a second time.  There is no legal basis for curing defects in the original return, or an untimely first amendment, through the 2006 amendment.

The IRS also argues that the S Corporations' and McFerrins' second amended 1999 returns are untimely because the original refund claim is no longer available to be amended.

---

[44]      *Id.* at 20.

This position has some support in legal treatises[45] and appears logical, but is the subject of a split in the case law.[46]   The decisions barring amendments are not squarely on point, however, because they address claims that the IRS has *denied*.  *See*, *e.g.*, *Mobil Corp*, 52 Fed. Cl. at 336; *PALA,*, 234 F.3d at 879 (informal claims that the IRS has denied may not be later amended).  The Eleventh Circuit has held that a claim that the IRS has *paid* may be amended to correct a defect in the claim's calculations.  *See Mut. Assurance v. United States*, 56 F.3d 1353, 1356-57 (11th Cir. 1995).  However, no other courts of appeal have adopted that reasoning, and the IRS and at least one circuit court refuse to follow its lead.[47]   The Fifth Circuit has not weighed in on the matter.

---

[45]   *See, e.g.,* 35 AM. JUR. 2d *Federal Tax Enforcement* § 505 (2007); 15 MERTENS LAW OF FED. INCOME TAXATION § 58:38 (2007) ("late amendment also may be allowed if the Service has not yet taken final action").

[46]   *See, e.g., Computervision Corp. v. United States*, 445 F.3d 1355, 1372 (Fed. Cir. 2006); *Mobil Corp. v. United States*, 52 Fed. Cl. 327, 336 (2002); *PALA, Inc. Employees Profit Sharing Plan and Trust Agreement v. United States*, 234 F.3d 873, 879 (5th Cir. 2000); *Union Pacific Railroad v. United States*, 182 Ct. Cl. 103, 109 (1968).

[47]   The Federal Circuit and Court of Claims have analyzed and disagreed with *Mut. Assurance* on a number of occasions.  *See, e.g., Computervision*, 445 F.3d at 1372 ("[T]he rule adopted by . . . *Mutual Assurance* is untenable since it would allow amendments submitted after filing the refund suit to extend the limitations period indefinitely.").  The IRS has issued a formal notice of nonacquiescence, expressing its intent not to comply with *Mut. Assurance* in any other circuit.  *See IRS Announcement Relating to: Mutual Assurance, Inc.*, 1999-41 I.R.B. 496 (1999).

Whether the IRS is required, or even permitted,[48] to review the McFerrins' recent amendment is an issue that the Court declines to reach at this time.  Having held that the S Corporations' and McFerrins 2003 amendments constituted a timely but erroneously computed refund claim, the parties will be required to determine what portion of the refund they believe must be repaid pursuant to this Court's ruling.  The briefing to date suggests that the parties do not dispute the method of calculating the refund[49]; they disagree on whether the returns underlying those calculations were timely filed.  Should the IRS and the McFerrins agree on the McFerrins' proper credit, which should be the research credits originating from the S Corporations but not any amount derived from SC Terminals' untimely amended 1999 claim, then this controversy can be resolved without requiring the IRS to process the second amended returns.  The Court accordingly directs the parties to recalculate the McFerrins' claim in light of this Memorandum.  The parties then shall submit

---

[48]   Although the parties have not briefed the matter, the IRS may have lost jurisdiction over the McFerrins' claim once the United States filed this suit.  By Executive Order, "[a]s to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice."  Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted following* 5 U.S.C. § 901 (2000).  The Federal Circuit, in *Computervision*, 445 F.3d at 1372, held that this provision ends the IRS's jurisdiction over a matter once suit is filed.  Because "the IRS's jurisdiction over the claim necessarily terminates on the date a refund suit is filed," it "no longer has the authority to resolve the claim, and therefore is without power to 'allow' or 'disallow' it."  *Id.*  The Court does not decide this issue.

[49]   *See* IRS's Response, at 5 n.6 ("defendants' second amended claim actual[ly] shows that they would now owe the IRS $85,188"); McFerrins' Reply, at 12 n.9 ("Plaintiff correctly states that the McFerrins' recomputation of the allowable IRC § 41(a) credit causes them to owe the IRS money.").

a joint status report to the Court by June 25, 2007.  The Court will decide whether the IRS

must process the second amended returns only if necessary.

## IV.   **CONCLUSION**

The McFerrins' first amended 1999 return was timely filed, as were those of the S

Corporations.  SC Terminals, however, filed its first amended 1999 return too late, and the

refund of the research credit it claimed was improper.  Insofar as that credit flowed through

to the McFerrins through the shareholder S Corporations, it must be repaid to the IRS as an

improper refund.  The Court will reserve ruling on the matter of the second amended returns,

in light of the fact that this Memorandum and Order may resolve the present controversy.

It is therefore

**ORDERED** that Plaintiff United States of America's Motion for Summary Judgment

[Doc. # 14] is **GRANTED** in part and **DENIED** in part, in accordance with this order.  It

is further

**ORDERED** that the McFerrins' Cross-Motion for Summary Judgment [Doc. # 26]

is **GRANTED** in part and **DENIED** in part, in accordance with this order.  It is further

**ORDERED** that the parties will submit a joint status report on or before **June 25,**

**2007**, detailing what legal and factual controversies they believe remain to be resolved.

**SIGNED** at Houston, Texas, this **25th** day of **May, 2007**.

Nancy F. Atlas
United States District Judge